# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : | |
| HEALTHCOMPARE INSURANCE SERVICES, INC. and JOHN DOE DEFENDANT d/b/a "HEALTH CARE DEPARTMENT", | : : : : : | |
| Defendants. | : : | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. HealthCompare Insurance Services, Inc. ("HealthCompare"), through its vendor John Doe which introduces itself on telemarketing calls as the "Health Care Department" ("John Doe") (collectively referred to as the "Defendants") engaged in a cold-calling, telemarketing

campaign to promote HealthCompare's insurance services to persons who had no prior relationship with them.

3. Indeed, Mr. Moore has previously sued HealthCompare for having its agents contact him through cold call telemarketing, despite the fact that Mr. Moore's phone number has been on the National Do Not Call List for years.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action against the Defendants on behalf of proposed nationwide classes of other persons who received calls during the Telemarketing Campaign.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff George Moore is a resident of Illinois in this District.

7. Defendant HealthCompare is a Delaware corporation with its principal place of business at 5630 University Parkway in Winston-Salem, NC 27105. HealthCompare is also licensed to do business and does business in Illinois. It can be served through Illinois Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62703.

8. Defendant John Doe is a telemarketing company hired by HealthCompare to make telemarketing calls to consumers, such as Mr. Moore. However, it does not properly identify itself on the telemarketing calls, instead using the name "Health Care Department".

**Jurisdiction & Venue**

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. The Defendants are subject to specific personal jurisdiction in this District because they engaged in telemarketing efforts that target this District, including the efforts made to contact the Plaintiff. Furthermore, HealthCompare is licensed to issue insurance or do business in the State of Illinois.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

**TCPA Background**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

Calls to Mr. Moore

16. The Defendants contacted Mr. Moore on a residential telephone number (630) 510-XXXX and a cellular number (630) 699-XXXX.

17. These numbers are not used for commercial purposes.

18. Mr. Moore uses the numbers for personal calls.

19. The numbers have been continuously on the National Do Not Call Registry for years prior to the receipt of the calls at issue.

20. Mr. Moore received telemarketing calls from John Doe on August 18, 23, 30, September 7, October 4 and 6, 2021.

21. The Caller ID was manipulated by John Doe.

22. Mr. Moore answered the calls.

23. During the first several calls, Mr. Moore was told the caller was calling from "Health Care Department" offering insurance services.

24. Mr. Moore was not interested and terminated the calls.

25. During the October 6, 2021 call, Mr. Moore was again told the caller was calling from "Health Care Department", and spoke with a "Mary" who offered insurance services.

26. Mr. Moore had spoken with "Mary" during the August 30 call as well.

27. The scripts used on the August 30 and October 6, 2021 calls were identical.

28. Mr. Moore was then transferred to Seth Oliver, an employee of HealthCompare.

29. During the call, Mr. Oliver offered Mr. Moore insurance services that HealthCompare promotes, including a WellCare PPO plan.

30. Mr. Moore ended the call with Mr. Oliver, and did not agree to receive any future calls.

31. Despite this, Mr. Moore was called by Mr. Oliver on October 11 and 14, 2021 regarding HealthCompare's insurance policy offering.

32. Mr. Moore had previously filed a lawsuit against HealthCompare for its agents' and vendors' telemarketing conduct, yet he still received these calls.

33. Plaintiff and all members of the class defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone lines from legitimate communication.

34. Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

**HealthCompare's Liability**

35. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

36. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

37. In that ruling, the FCC instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

38. By permitting its agents to engage in telemarketing, HealthCompare "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

39. HealthCompare directs its agents as to what sales tactics to use as well as what insurance products and services to offer to potential customers.

40. John Doe is an agent of HealthCompare.

41. At all times, HealthCompare maintained interim control over John Doe.

42. For example, HealthCompare had absolute control over whether, and under what circumstances, it would accept a customer from an agent and the various methods by which its agents could advertise to obtain clients for HealthCompare.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

43. Additionally, HealthCompare had the ability and the authority to restrict the geographic regions in which its agents could market for HealthCompare.

44. HealthCompare also had the ability to audit and investigate to ensure that its agents' marketing of HealthCompare products and services was compliant with the law.

45. Prior to having Mr. Oliver contact Mr. Moore, HealthCompare also had the ability to determine that Mr. Moore's number was listed on the National Do Not Call Registry, and to not take the call.

46. HealthCompare has been sued multiple times for the conduct of its agents in alleged violation of the TCPA. *See Naiman v. HealthCompare Insurance Services, Inc., et. al.*, Civil Action No. 2:19-cv-04748 (D. AZ.); *Hall v. HealthCompare Insurance Services, Inc., et. al.*, Civil Action No. 2:20-cv-1209 (D. NM.).

47. Indeed, Mr. Moore had previously filed a lawsuit against HealthCompare for its agents' and vendors' telemarketing conduct, yet he still received these calls.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

### Class Action Allegations

49. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

50. The class of persons Plaintiff proposes to represent is tentatively defined as:

**National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call (3) from or on behalf of HealthCompare (4) with a 12-month period, (5) from four years prior to the filing of the Complaint.

51. Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The class as defined above are identifiable through phone records and phone number databases.

53. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

54. Plaintiff is a member of the class.

55. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

> (a) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;
>
> (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;
>
> (c) whether HealthCompare is vicariously liable for John Doe's conduct;
>
> (d) whether Defendants' conduct constitutes a violation of the TCPA; and
>
> (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

56. Plaintiff's claims are typical of the claims of class members.

57. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58. The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

60. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the National Do Not Call Registry Class**

61. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62. Defendants violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on their behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

63. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

64. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

65. The Defendants' violations were knowing or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

                                      PLAINTIFF,
                                      By his attorney

                                      */s/ Anthony I. Paronich*
                                      Anthony I. Paronich
                                      Paronich Law, P.C.
                                      350 Lincoln Street, Suite 2400
                                      Hingham, MA 02043
                                      (508) 221-1510
                                      anthony@paronichlaw.com